# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SUELLEN SHAW, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No. 14-0111-CG-B |
| | ) |
| MOBILE COUNTY PUBLIC SCHOOL SYSTEM, | ) |
| | ) |
|    Defendant. | ) |

## ORDER

This case concerns a claim of discriminatory hiring practices within the Mobile County Public School System. Suellen Shaw ("Plaintiff") alleges the Mobile County Public School System ("Defendant") hires male driver's education teachers so they can coach football or other male sports. As a result, Plaintiff contends Defendant unlawfully discriminated against her based on her gender when she applied for certain driver's education positions. Before the Court are Defendant's Motion for Summary Judgment (Doc. 35) and supporting materials (Docs. 36 – 39), Plaintiff's response in opposition to the motion (Doc. 44) and supporting materials (Docs. 45 – 51), and Defendant's reply. (Doc. 52). Upon careful consideration and for the reasons set forth herein, Defendant's motion for summary judgment is due to be denied.

    **I.**     **Procedural History**

Plaintiff filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") on December 16, 2013. (Doc. 1, p. 3). After the EEOC issued a right-to-sue letter (Doc. 1, Exh. 1, p. 1), Plaintiff filed her complaint on March 11, 2014. (Doc. 1, p. 3). Plaintiff initially sued the Mobile County Board of School Commissioners in their individual and official capacities, but the parties agreed to dismiss the individual defendants. (Docs. 10, 12, 13, 17). Plaintiff maintains her claim against the Mobile County Public School System.

In her complaint, Plaintiff alleges Defendant unlawfully discriminated against her based on her gender, violating Title VII of the Civil Rights Act.[1] (Doc. 1, p. 8). Plaintiff specifically alleged "Defendant has engaged in a pattern and practice of discrimination based on sex," and "Plaintiff was rejected for the position of Driver's Education Teacher by Defendant based on her sex." (Doc. 1, p. 8). This caused Plaintiff to suffer mental anguish, loss of dignity, embarrassment, humiliation, severe emotional distress, and other injuries. (Doc. 1, p. 9). Through this lawsuit, Plaintiff seeks to redress this alleged discrimination. (Doc. 1, p. 8).

Following discovery, Defendant filed a motion for summary judgment arguing (1) Plaintiff "may only recover for discrete acts of discrimination that occurred on or after June 16, 2013" (Doc. 37, p. 5), (2) Plaintiff cannot show she suffered an adverse employment action (Doc. 37, p. 4), and (3) even if Plaintiff timely filed her EEOC complaint and suffered an adverse employment action, Defendant has presented legitimate non-discriminatory

---

[1] Title VII of the Civil Rights Act of 1964 prohibits discrimination "because of sex" or "on the basis of sex." 42 U.S.C. § 2000e.

2

reasons for its hiring decisions. (Doc. 37, p. 7; Doc. 52, pp. 2 – 5). Plaintiff responded to the motion, stating she need only "demonstrate that gender was a motivating factor for the employment practice, even though other factors also motivated the practice." (Doc. 44, p. 1). Plaintiff also argues that she suffered an adverse employment action because the duties and responsibilities of the desired positions were materially different than the position she held. (Doc. 44, p. 8). Plaintiff contends there are disputed issues of material fact that prohibit granting Defendant's motion for summary judgment as a matter of law. (Doc. 44, p. 20).

## II.   Standard of Review

The court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) governs procedures and provides that a party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion. This includes "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804,

809 (11th Cir. 2004).

The substantive law of the plaintiff's cause of action determines which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. In reviewing whether a non-moving party has met its burden, the Court must stop short of weighing the evidence and determining credibility. Instead, the Court must draw all justifiable inferences in favor of the non-moving party. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 – 99 (11th Cir. 1992) (internal citations and quotations omitted). Thus the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52.

### III. Facts[2]

Plaintiff is certified to teach physical education, driver's education, and act as a school counselor. (Doc. 36, p. 1). Plaintiff currently works as a physical education teacher at Baker High School.[3] (Doc. 36, pp. 1 – 2). Baker High School is located in Mobile County, Alabama, as are each of the high

---

[2] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton, 965 F.2d at 998–99. The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[3] As a physical education teacher, Plaintiff also teaches some driver's education classes. (Doc. 38, Exh. 1, p. 3).

schools discussed in this case. Prior to working at Baker, Plaintiff worked as a driver's education teacher at Satsuma High School. (Doc. 45, p. 3). Plaintiff transferred to Satsuma in 2011 through Defendant's mandatory transfer process. (Doc. 45, p. 3; Doc. 46, Exh. 1, pp. 1 – 2). While teaching driver's education at Satsuma, Plaintiff received state recognition for her work. (Doc. 44, p. 6; Doc. 46, Exh. 1, p. 2). Before working at Satsuma, Plaintiff worked at B.C. Rain High School from 2000 to 2011. (Doc. 45, p. 3). B.C. Rain classified Plaintiff as a driver's education teacher, but she also coached girls' sports and taught physical education courses there. (Doc. 45, p. 3). Plaintiff alleges she could not return to B.C. Rain after working at Satsuma because B.C. Rain "needed a slot for a football coach," so "they waited for somebody to get certified" to teach driver's education. (Doc. 45, p. 3; Doc. 46, Exh. 8, p. 3).

On May 15, 2012, Plaintiff asked Defendant about available driver's education positions, observing "since Feb. 6th you and HR knew you needed to place me in a Driver Education position due to the Satsuma split. Since that time, a 'hiring freeze' has been put into place yet two (2) Driver Education positions, Blount and Baker, have been filled with hires from outside the system." (Doc. 48, Exh. 12, p. 2). John Powell, Personnel Administrator with the Mobile County Pubic Schools, replied to Plaintiff's inquiry and stated, "As I said previously I will try to find you a position to your liking. As you have been a coach during your career you understand the need to bring in coaches. That is what happened this semester." (Doc. 48, Exh. 12, p. 1).

Ultimately, Plaintiff did not obtain a driver's education position in 2012. Plaintiff filed an EEOC charge in December 2012 asserting gender discrimination by Defendant. (Doc. 45, p. 12). Defendant responded to the charge and reported to the EEOC that it had no driver's education vacancies in 2012 when Plaintiff herself transferred. (Doc. 45, p. 12; Doc. 49, Exh. 11, p. 2). Plaintiff's 2012 EEOC charge did not proceed. (Doc. 45, pp. 11 – 12).

Despite Defendant's statement regarding vacancies (Doc. 49, Exh. 11, pp. 1 – 2),[4] Plaintiff documents schools that hired or assigned male employees to teach driver's education in 2012. Baker High School hired Carlton Everett around March 1, 2012 to teach driver's education and coach football. (Doc. 45, p. 5).[5] Around May 1, 2012, Blount High School hired Mark Hurt to teach

---

[4] Defendant provides affidavits and depositions showing a high school principal can adjust the schedules of teachers with multiple certifications, for example, by adding a class to a teacher's schedule in a different subject in which that teacher is also certified. (Doc. 38, Exh. 5, pp. 8 – 9).

[5] The record shows Baker High School may have initially hired Everett to teach Social Studies. (Doc. 46, Ex. 5, pp. 25 – 26). Everett, however, did not teach Social Studies. (Doc. 45, p. 7).
> Q So if Mr. Richardson hired a driver's ed teacher in a social studies spot and never intended for him to teach social studies, that would be improper procedures; is that correct?
> A I would say he was putting one over on us and trying to get around the mandatory transfer stuff.
> Q And he would be --
> A I would say that is wrong, yeah, I would say he's wrong that he did that.
> …
> Q Were you aware that Clem Richardson indicated to Ms. Shaw that he didn't have any vacancies?
> A There he's saying he doesn't have any driver's ed vacancies. I wasn't aware of this email exchange. I wasn't aware that he did that. Like I said, some of our principals are more aggressive in trying to get who they want. Clem does a good job. I mean, every year he takes people on mandatory transfer. He takes people on the mandatory transfer list

physical education and coach football, and then reassigned him to driver's education. (Doc. 45, pp. 5 – 6). In the summer of 2012, Mary G. Montgomery High School assigned Joseph Touchstone to teach driver's education and coach football. (Doc. 45, p. 7).

In 2013, Plaintiff applied and interviewed for driver's education positions at Murphy High School and Citronelle High School. (Doc. 36, p. 2; Doc. 45, pp. 8 – 9). Plaintiff did not get either job; instead, the two schools selected male applicants to teach the driver's education classes. (Doc. 36, p. 2). One male applicant coached football and boys soccer (Doc. 47, Exh. 15, pp. 2, 8), and the other male applicant coached baseball. (Doc. 50, pp. 3, 19). At the time the job offers were made, one of the male applicants was not certified to teach driver's education. (Doc 45, p. 8). Currently, all of the driver's education teachers at both high schools are men who coach male sports. (Doc. 45, pp. 6 n. 6, 8 – 9).

Plaintiff notes there are thirty-one driver's education teachers in Mobile County, and two are female. (Doc. 45, p. 11). Of those thirty-one teachers, thirteen are full-time and one of the full-time teachers is female. (Doc. 45, p. 11). Since 2005, only males who coach sports have been hired or placed in full-time driver's education positions. (Doc. 45, p. 11). Plaintiff further asserts males who coach sports are routinely hired as driver's education teachers even though those positions are not posted and advertised

without a complaint. But, you know, this doesn't look like he did the right thing on there.
(Dep. of Bryan Hack, Executive Manager of Human Resources, Mobile County Public School System, Doc. 46, Ex. 5, pp. 25 – 26).

as required under Defendant's policies and state law. (Doc. 45, pp. 1, 8 – 10). In her response, Plaintiff documents specific violations of hiring procedures, such as the failure to interview three candidates for job openings, the absence of interview control forms in the files of newly hired driver's education teachers, and being informed during an interview for a driver's education position that the school had already selected a male applicant for the job. (Doc. 44, pp. 2 n. 1, 13 – 16).

On December 16, 2013, Plaintiff again filed an EEOC charge based on gender discrimination. (Doc. 37, p. 2). The EEOC issued to Plaintiff a right-to-sue letter on December 26, 2013. (Doc. 1, Exh. 1). Plaintiff initiated this lawsuit on March 11, 2014, claiming Defendant discriminated against her because of her sex. (Doc. 1).

**IV.   Analysis**

Under Title VII of the Civil Rights Act of 1964, an employer may be found liable for unlawful sex discrimination under any one of three separate theories: pattern and practice discrimination, disparate treatment discrimination, or disparate impact discrimination. See Griffin v. Carlin, 755 F.2d 1516, 1522, 1526 – 28 (11th Cir. 1985) (discussing disparate impact theory, disparate treatment theory, and pattern or practice analysis). In this case, Plaintiff raises two of the three theories, pattern and practice discrimination and disparate treatment discrimination.[6] (Doc. 1, p. 8). A

---

[6]   Pleadings must state a short and plain statement of the claim showing that a pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). In her complaint, Plaintiff stated "[t]his is a

private litigant, however, cannot maintain a pattern or practice claim unless it is brought as a class action and a class is certified. Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 969 (11th Cir. 2008). Therefore, Plaintiff may only proceed under a disparate treatment theory.

The primary issue in a gender based disparate treatment claim is whether the employer intentionally discriminated against the employee because of her gender. See U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983). In a disparate treatment case, the plaintiff bears the ultimate burden of proving that the employment action at issue was taken because of the plaintiff's sex. See Holifield v. Reno, 115 F.3d 1555, 1564–65 (11th Cir. 1997). To meet this burden, plaintiffs must show discriminatory intent through either direct or circumstantial evidence. See U.S. Postal Service Bd. of Governors, 460 U.S. at 714 n. 3.

When a plaintiff lacks direct evidence and must prove discrimination circumstantially, the claim is evaluated using the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden shifting framework. Under this framework, the Title VII plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. at 802. The defendant can rebut the

---

claim to redress unlawful discrimination on the basis of sex in violation of Title VII," "Plaintiff was rejected for the position of Driver's Education Teacher by Defendant based on her sex," and "Defendant has engaged in a pattern and practice of discrimination based on sex." (Doc. 1, p. 8). Plaintiff also provided factual allegations in support of her claim (Doc. 1, pp. 3 – 8), which may entitle her to relief. See id. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Plaintiff has sufficiently stated a gender discrimination claim under a disparate treatment theory. (Doc. 52, p. 5).

disparate treatment claim if it can articulate a non-discriminatory reason for its employment action, as explained further below. Plaintiff can then argue the rationale provided by the defendant is a pretext. Id. at 804.

Before examining Plaintiff's prima facie discrimination case, the Court must first determine whether Plaintiff timely filed her EEOC charge. If Plaintiff timely filed her EEOC charge, then the Court must consider whether she suffered an adverse employment action. If Plaintiff clears these two hurdles, the Court will analyze her discrimination claim.

  a. **Filing an EEOC Charge**

At the outset, the Court must determine whether Plaintiff properly filed her EEOC charge. "Section 706 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5, governs the filing of charges of discrimination with the EEOC." Edelman v. Lynchburg Coll., 535 U.S. 106, 112 (2002). In order to assert a claim of gender discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred. 42 U.S.C. § 2000e-5(e).[7] This 180-day period "begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred." Allen v. U.S. Steel Corp., 665 F.2d 689, 692 (5th Cir. 1982) (citations omitted). The plaintiff also must file her complaint within 90 days of exhausting her administrative remedies and receiving her "right-to-sue" letter from the EEOC. See 42 U.S.C. § 2000e-

---

[7] If the complainant has first instituted proceedings with a state or local agency, the filing period is extended to 300 days or 30 days after the denial of relief by the agency. 42 U.S.C. § 2000e–5(e)(1). Because the 180–day period applies to this case, that figure will be used throughout.

5(f)(1); Green v. Union Foundry Co., 281 F.3d 1229, 1233 – 34 (11th Cir. 2002).

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire may start the 180-day clock for discrimination claims. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). "The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened." Id. at 117.[8]

Here, Plaintiff filed the EEOC charge in question on December 16, 2013. (Doc. 45, p. 12). Plaintiff relies on two discrete acts that occurred in the summer of 2013 for her EEOC complaint. The first discrete act occurred when a driver's education teacher retired at Murphy High School, creating an

---

[8] The Court recognizes that the Lily Ledbetter Fair Pay Act of 2009 ("the Act") amended 42 U.S.C. § 2000e-5. PUB. LAW NO. 111-2, 123 Stat. 5 (2009). The Act applies to discrimination cases concerning equal pay, which is not raised as an issue here, but it helps explain when an EEOC charge should be filed. The Act expressly overturned the Supreme Court's ruling in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007). In that case, the Supreme Court found the employee must "file charges year by year, each time Goodyear failed to increase her salary commensurate with the salaries of male peers." As a result, "[a]ny annual pay decision not contested immediately (within 180 days)" became "grandfathered, a fait accompli beyond the province of Title VII ever to repair." Id. at 644. (Ginsburg, J., dissenting). The law now provides each discriminatory paycheck (rather than simply the original decision to discriminate) resets the 180-day limit to file a claim. This is analogous to a discrete act that triggers or "resets" the 180-day limit. See Nat'l R.R. Passenger Corp., 536 U.S. at 113 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

opening for the position. The Principal of Murphy High School recommended a man who also coaches male sports for the position. (Doc. 45, p. 8). The male coach ultimately got the job in August 2013. (Doc. 50, pp. 7 – 8). This discrete act falls within the 180-day window for Plaintiff's EEOC charge. The second discrete act took place when Citronelle High School had a vacancy for a driver's education teacher in May 2013. On or about August 14, 2013, Citronelle hired a man who also coaches male sports for the position. (Doc. 45, p. 9). These two discrete acts, which can be considered a refusal to hire or a denial of transfer, occurred less than 180 days before Plaintiff filed her EEOC charge in December 2013. Plaintiff timely filed her EEOC charge.

Defendant, however, argues that the "EEOC has no jurisdiction to consider claims based" on facts that "occurred before the date" Plaintiff filed her charge. (Doc. 37, p. 5). Defendant further argues the claims in a federal action cannot extend beyond those claims over which the EEOC had jurisdiction. (Doc. 37, p. 5). These arguments misconstrue the law, and require clarification.

First, this Court can certainly consider claims based on facts that fall within the 180-day timeframe for filing an EEOC charge. And Plaintiff can cite anecdotal or statistical evidence beyond that timeframe to help prove discrimination.[9] Second, "the scope of an EEOC complaint should not be

---

[9] To be sure, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp., 536 U.S. at 113. The Supreme Court makes clear, however, that the "existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about

strictly interpreted." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (citation omitted); see also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) (noting that allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination related to the allegations contained in the EEOC charge). Here, the judicial complaint plainly encompasses the allegations contained in Plaintiff's EEOC charge: gender discrimination specific to driver's education teacher hiring in Mobile County. Finally, the requirement that a claimant file "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). In light of these considerations, the Court finds Plaintiff timely filed her EEOC charge in December 2013, and the scope of the EEOC charge concerns discriminatory driver's education teacher hiring in Mobile County.

### b. Adverse Employment Action

Plaintiff must show that she suffered an adverse employment action to proceed in her discrimination claim. Defendant argues Plaintiff sought a purely lateral transfer, and therefore she did not suffer an adverse employment action when she did not get hired for the driver's education

---

related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." Id. Moreover, Plaintiff's pattern or practice evidence is not irrelevant simply because she cannot bring such a claim as a private litigant. Davis v. Coca-Cola, 516 F.3d at 970 n. 33.

positions at Murphy High School or Citronelle High School. (Doc. 37, pp. 6 – 7). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 71 (2006) (internal quotation and citation omitted).

Generally, an adverse employment action is a "tangible employment action [that] constitutes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (citations omitted). To prove an adverse employment action occurred, an employee must show a serious and material change in the terms, conditions, title, prestige, or privileges of employment. Davis v. Town of Lake Park Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). Moreover, the employee's subjective view of the significant adversity of the employer's action is not controlling. Id. at 1239; see also Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1449 – 54 (11th Cir. 1998) (discussing transfers that amount to adverse employment action, and advising district court it should explain why it believes that a reasonable person in plaintiff's position would or would not have found the transfer to have been an adverse employment action). A "bruised ego" is not enough. Flaherty v. Gas Research Inst., 31 F.3d 451, 456 (7th Cir. 1994).

Plaintiff articulates reasons why teaching driver's education is not

merely a lateral transfer and could be considered a better job than her current one as a physical education teacher at Baker High School. (Doc. 44, p. 8). Plaintiff contends the driver's education positions involve a change of duties and responsibilities, and a change of job classification. (Doc. 44, p. 8). Driver's education teachers oversee fewer students at any given time than physical education teachers, and the jobs are generally less demanding. (Doc. 44, p. 9). Additionally the driver's education positions provide more free time than other teaching jobs, which allows driver's education teachers to pursue coaching opportunities and thus increase their overall salaries. (Doc. 44, p. 8). The principal at Citronelle High School stated that the driver's education placement is considered "moving up." (Doc. 44, p. 8; Doc. 46, Exh. 4, p. 4). Based on this record and considering all of the circumstances, a jury could reasonably conclude that the failure to hire or transfer an employee from physical education to driver's education would have been materially adverse to a reasonable employee.

### c. Establishing a Prima Facie Gender Discrimination Case

Plaintiff first argues she has direct evidence of discrimination (Doc. 44, p. 2), but also states Defendant's actions imply a discriminatory intent. (Doc. 44, p. 4). Plaintiff then proceeds with a burden shifting analysis. (Doc. 44, p. 4). The Court agrees with Defendant that Plaintiff's evidence of discrimination is circumstantial. (Doc. 52, pp. 1 – 2). Therefore, the McDonnell Douglas burden-shifting framework applies. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004) (citations omitted).

15

Under this framework, the burden is first on plaintiff to establish a prima facie case. To establish a prima facie case of sex discrimination under Title VII, a plaintiff must prove: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job. Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 842 – 43 (11th Cir. 2000). "The burden of establishing a prima facie case of disparate treatment is not onerous." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Here, the parties do not dispute that Plaintiff, a female, is a member of a protected class. See B/E Aerospace, Inc., 376 F.3d at 1089. She applied for positions as a driver's education teacher, and the positions were given to men. Plaintiff presents substantial evidence that she was qualified for the job. Plaintiff has thus satisfied the four factors needed for a prima facie discrimination case.

### d. Burden shifting after establishing prima facie case

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the employee's rejection. See id. If the employer meets this burden of production, the plaintiff must then establish that the defendant's proffered reasons for the employee's rejection were pretextual. Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000). An employer's deviation from its own standard procedures may serve as evidence of pretext.

Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1299 (11th Cir. 2006); see also Bass v. Bd. of Cnty Com'rs, Orange Cnty, Fla., 256 F.3d 1095, 1108 (11th Cir. 2001) (stating that employer's violation of its own hiring procedure could be evidence of pretext) overruled in part on other grounds by Crawford v. Carroll, 529 F.3d 961 (11th Cir. 2008).

Defendant articulates a legitimate, non-discriminatory reason for its hiring decisions.[10] (Doc. 37, p. 7). Defendant states the male employees hired at Murphy High School and Citronelle High School had good working relationships with the administrators at each school, and the Principals making the decisions held each of the employees in high esteem. (Doc. 37, p. 7). Plaintiff argues this reasoning is pretext because neither position was posted, nor were interview procedures followed. (Doc. 44, p. 13). Plaintiff further states Defendant's willingness to bend or break rules for the placement of male coaches in driver's education is ample evidence of pretext. (Doc. 44, p. 14). The Court agrees. Thus Plaintiff has created an issue of fact as to whether the Defendant's reason was untrue and discrimination occurred. As a result, Plaintiff has satisfied her pretext burden.

V.   **Conclusion**

The Court finds Plaintiff has demonstrated there are genuine disputes

---

[10] Defendant, citing 42 U.S.C. § 2000e-5(g)(2)(B), states it can "escape all liability for damages on the Title VII claim if [it] can establish that the same decision would have been made for non-discriminatory reasons." (Doc. 37, p. 4). Plaintiff may nevertheless obtain declaratory relief, injunctive relief, and attorney's fees and costs if she proves Defendant violated 42 U.S.C. §2000e-2(m) (employer using impermissible motivating factor). See 42 U.S.C. § 2000e-5(g)(2)(B)(i).

of material facts underlying her discrimination claim. As a result, there are allegations in this case that a fact-finder must decide, and Defendant's arguments cannot be decided as a matter of law. Accordingly, Defendant's Motion for Summary Judgment (Doc. 35) is **DENIED.**

    **DONE** and **ORDERED** this 2nd day of February, 2015.

                                        /s/  Callie V. S. Granade
                                        UNITED STATES DISTRICT JUDGE